UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

)
)
KEON MONTEIRO,                        )
)
Petitioner              )
)
v.                            )
)          Case No. 23-cv-11609-DJC
)
COMMONWEALTH OF MASSACHUSETTS,   )
)
Respondent.             )
_____)

MEMORANDUM AND ORDER

CASPER, C.J.                                                  December 16, 2025

I.    Introduction

Petitioner Keon Monteiro ("Monteiro"), proceeding *pro se*, has filed a petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 (the "Petition").  D. 1.  For the reasons set forth below, the Court DENIES the Petition.

II.    Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that a person in state custody may petition a federal court for relief on the grounds that such custody is in violation of the petitioner's constitutional rights, or the laws and treaties of the United States. 28 U.S.C. § 2254(a).  For a federal court to grant *habeas* relief, the burden lies with the petitioner to demonstrate that the judgment of the state court, as adjudicated on the merits, was either (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable

1

determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court's judgment is "contrary to" federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). The "unreasonable application" clause applies when "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. Significantly, "an *unreasonable* application of federal law is different from an *incorrect* application of federal law," id. at 410 (emphasis in original), such that a state court's application of the law will not be deemed unreasonable if "'fairminded jurists could disagree' on the correctness of the state court's decision," Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

Under Section 2254(d)(2), factual determinations made by a state court are "presumed to be correct" unless rebutted by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in the light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). In essence, *habeas* relief provides a "guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." Harrington, 562 U.S. at 102-03 (citations and internal quotation marks omitted). Accordingly, AEDPA "mandates highly deferential federal court review of state court holdings." Zuluaga v. Spencer, 585 F.3d 27, 29 (1st Cir. 2009) (citing Williams, 529 U.S. at 403). "[E]ven a strong case for relief does not mean the

state court's contrary conclusion was unreasonable" as Section 2254(d) is "designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." Harrington, 562 U.S. at 102-03.

## III.    Relevant Factual and Procedural Background

Unless otherwise noted, the factual background set forth below is drawn from the Suffolk Superior Court's ruling on Monteiro's second motion for a new trial, D. 15-2; D. 28-1 at 713-34, the Massachusetts Appeals Court's decision affirming Monteiro's convictions on the consolidated appeal and the denial of his second motion for a new trial, D. 1-3 at 2-11; D. 15-3; D. 28-1 at 527-530; Commonwealth v. Monteiro, No. 19-P-1280, 2022 WL 2674229, at *1 (Mass. App. Ct. July 12, 2022) (unpublished), and the state court record, D. 28-1 *et seq*.

### A.    The Crime, Police Investigation and Charges

On November 28, 2012, at approximately 2:44 p.m., the Boston Police received a report regarding shots fired in the vicinity of Batchelder and Longmeadow Streets in Roxbury. D. 28-1 at 714. Witness Luis Docanto ("Docanto") was walking in the vicinity of Batchelder Street with his nephew at the time of the shooting when he heard a single gunshot, and following a pause, heard two more gunshots. Id. at 714-15. An individual "clutching the butt end of a gun" approached within seven or eight feet of Docanto and "sputtered, 'gunshots, somebody just got shot'" and resumed running up the street. Id. at 715. Docanto watched the male run to a black Lexus SUV, unlock and enter the driver's side, and speed away. Id. Docanto looked at the license plate and typed a partial plate listing in the notes section of his cell phone. Id. Officers found two apparent shooting victims, later identified as Sean Repetto ("Repetto") and Victor Otoadese ("Otoadese"). Id. at 714. Otoadese died while in transport to the Boston Medical Center and Repetto succumbed to his injury on December 2, 2012. Id.

The Boston Police conducted a search of motor vehicle records using the partial license plate data provided by Docanto and found a potential match to a vehicle registered to Monteiro's mother.  Id. at 716.

### B.    Trial Testimony

On July 26, 2013, a Suffolk County grand jury returned an indictment charging Monteiro with the murders of Sean Repetto and Victor Otoadese.  See D. 28-1 at 9.  Monteiro's jury trial began on November 12, 2025.  Id. at 713.  George Timothy Bryson ("Bryson") testified to encountering Otoadese and Repetto in Quincy the morning of November 28, 2012.  Id. at 716. Bryson stated that once they arrived in front of Maria Cancel's house in Water Street in Quincy, Monteiro, known to Bryson as "Killa," drove by in his black Lexus SUV and called out to Repetto that he would be right back.  Id.  Bryson testified that at some point Repetto and Otoadese left the house and when he looked out the front door from the foyer, he saw Monteiro's Lexus and Otoadese enter the front passenger seat and Repetto get into the rear seat.  Id. at 716-17.  The Commonwealth presented evidence of calls placed between Monteiro's phone and Repetto's phone on November 28, 2012 that corroborated Bryson's testimony.  Id. at 717.

Bryson also testified that Monteiro made threats to him on two different occasions after the homicides.  Id. 718; D. 28-1 at 527.  "[Monteiro] asked Bryson 'why [Bryson] was running around telling people that [Monteiro] . . . did what he did.  The first threat occurred days before Otoadese's funeral, and the second occurred two weeks before Bryson testified before a grand jury. [Monteiro] addressed himself to Bryson as 'Killa' and Bryson knew [Monteiro] by the nickname 'Killa.'  At the time of the first threat [Monteiro] moved his hand to his waistline indicating he may be carrying a concealed weapon."  D. 28-1 at 527.

4

Stephanie Vega ("Vega") testified that she was a friend of Repetto and Otoadese and posted about their deaths on Facebook.  <u>Id.</u> at 718.  Vega testified that [Monteiro] "approached Vega in a convenience store, introduced himself as 'Killa,' and told her 'if you keep talking, you can end up the same way like them.'"  <u>Id.</u> at 528, 718.

C.    <u>Post Conviction State Court Proceedings</u>

On December 4, 2015, a jury found Monteiro guilty of two counts of murder in the second degree and unlawful possession of a firearm and the trial court sentenced him to concurrent terms of life imprisonment on the murder convictions (and four to five years on the firearm conviction). D. 28-1 at 713.  The original trial judge (Roach, J.) was replaced during the course of the trial, with the assent of the parties, by another judge (Locke, J.).  <u>Id.</u>  On January 5, 2016, Monteiro filed his first motion for a new trial, arguing that a juror discussed his case during a prayer service prior to deliberations in violation of the court's instructions not to discuss the trial.  <u>Id.</u> at 22, 714.  The court denied the motion on April 12, 2017, without an evidentiary hearing.  <u>Id.</u> at 23, 714. Monteiro did not appeal this denial.  <u>See</u> D. 15-3 at 1; <u>Monteiro</u>, 2022 WL 2674229, at *1.

On July 17, 2017, Monteiro filed his second motion for a new trial, arguing that the court erred in admitting evidence of Monteiro's alias, "Killa," witness testimony concerning evidence of consciousness of guilt and that his trial counsel was ineffective.  D. 28-1 at 714, 723-33.  Prior to the hearing on the motion, Monteiro moved to have the case transferred back to the original trial judge.  <u>See</u> D. 2 at 12-13; D. 15-1 at 20; D. 28-1 at 24.  Judge Locke denied the motion.  D. 28-1 at 24.  The trial court held an evidentiary hearing on November 16, 2018, and December 14, 2018, and subsequently denied the second motion for a new trial, reasoning that the trial court properly exercised its discretion in allowing evidence of the nickname, "Killa" and witness testimony concerning consciousness of guilt.  <u>Id.</u> at 24-25, 723-26.  The court further reasoned that Monteiro

did not satisfy the standard of ineffective assistance of counsel because, among other reasons, there was no evidence that his trial strategy was "manifestly unreasonable" to warrant a basis for a new trial.  See id. at 726-34.

In a consolidated appeal from Monteiro's convictions and second motion for a new trial, the Massachusetts Appeals Court affirmed the Suffolk Superior Court's ruling.  D. 1-3 at 1; D. 15-3 at 1; D. 28-1 at 527; Monteiro, 2022 WL 2674229, at *1.  The appellate court noted that Monteiro did not appeal his first motion for a new trial and, therefore, the issues considered as to a motion for a new trial by the court only included whether the trial court erred by admitting evidence of Monteiro's nickname, "Killa," and consciousness of guilt, and whether trial counsel was ineffective.  D. 1-3 at 1-2; D. 15-3 at 1; D. 28-1 at 527; Monteiro, 2022 WL 2674229, at *1.  With respect to the admission of Monteiro's nickname, the appellate court concluded that the evidence of his nickname was "relevant to his identity and to the context of the threat he intended to convey to both witnesses," that the record did not "support [Monteiro's] further claim that the Commonwealth made gratuitous use of and exploited [Monteiro's] nickname to impeach his character," that "[t]he witnesses who were threatened did not overuse the nickname during their testimony" and that "the single reference to the nickname during the prosecutor's closing argument did not constitute a substantial risk of a miscarriage of justice."  D. 28-1 at 528.  As to the ineffective assistance of counsel issues, the appellate court concluded that Monteiro's experienced criminal defense lawyer made "reasonable, strategic decisions" to attempt to undermine the Commonwealth's case and discredit key witnesses.  Id. at 529.  The appellate court also noted that the "trial counsel's performance did not fall measurably below that of an ordinary fallible lawyer" by conceding that Monteiro used the cell phone "close in proximity to the crime scene a few minutes after the murders" because trial counsel was aware a witness would testify regarding

6

Monteiro's possession and use of the cell phone on the day of the murders and because trial counsel's strategy was "to attempt to discredit the evidence by casting doubt that [Monteiro] was at the location of the murders." Id.

On August 1, 2022, Monteiro submitted an application for leave to obtain further appellate review ("ALOFAR") to the Supreme Judicial Court. D. 15-4 at 1, 24; see D. 28-1 at 735-59. In identifying the issues for which Monteiro was seeking further appellate review, he asked the Supreme Judicial Court, first, to consider whether the decision to admit evidence of Monteiro's nickname "Killa" unfairly prejudiced Monteiro, second, to consider whether the trial judge properly admitted evidence of consciousness of guilty through threatening witnesses, and third, whether Monteiro's trial counsel's strategy was "manifestly unreasonable and counterproductive, costing Monteiro a chance of acquittal." D. 28-1 at 747-48. On September 12, 2022, the Supreme Judicial Court denied the ALOFAR. See D. 2 at 5; D. 28-1 at 770; Commonwealth v. Monteiro, 490 Mass. 1105, 1105 (2022).

**D.    This Petition**

Monteiro filed the Petition asserting four grounds for relief: (1) the trial court failed to properly investigate the allegations of juror misconduct; (2) the trial court erred by admitting evidence of the use of Monteiro's alias, "Killa," during trial; (3) trial counsel was ineffective by failing to assert a "third party culprit" defense; and (4) Monteiro's appellate counsel provided ineffective assistance by failing to move to recuse Judge Locke. D. 1 at 5-10. On August 30, 2024, this Court allowed the Commonwealth's motion to dismiss as to Grounds One and Four and concluded it would dismiss the other grounds unless Monteiro voluntarily dismissed the claims on exhaustion grounds. D. 20. Subsequently, Montiero moved to dismiss the unexhausted grounds remaining in his Petition, Grounds One and Four, D. 21, and the Petition now proceeds as to the

remaining grounds, Grounds Two and Three. D. 22. The remaining grounds for habeas relief are as follows: The Commonwealth erred by admitting evidence of the use of Monteiro's alias, "Killa," during trial (Ground Two); and Monteiro's trial counsel was ineffective by failing to assert a "third party culprit" defense (Ground Three). D. 1 at 7-8; D. 23 at 2-5.

## IV.     Discussion

### A.     <u>Admission of Monteiro's Nickname (Ground II)</u>

Monteiro contends that the Suffolk Superior Court erred in allowing the Commonwealth to use Monteiro's entertainment/rapper nickname, "Killa," as evidence of guilt over the objections of his trial counsel. D. 1 at 7; D. 2 at 9; D. 23 at 3-4. Monteiro argues the admission of the nickname was prejudicial to his defense and deprived him of the right to a fair trial because the nickname "justified the possibility that he was a dangerous person who could have committed the crime of murder, even though he had never been accused, charged, or previously convicted of this type of crime." D. 1 at 7; D. 2 at 7; D. 23 at 2.

#### 1.     *Ground II is Unexhausted*

The Commonwealth argues that Monteiro did not exhaust a federal constitutional basis for this claim in state court because although Monteiro invoked his right to a fair trial, "he relied primarily on state law addressing the admissibility of evidence" and "cannot meet his 'heavy burden' of proving he exhausted the fair trial aspect of Ground Two." D. 27 at 10-11. "To achieve exhaustion, 'a habeas petitioner bears a heavy burden to show that he fairly and recognizably presented to the state courts the factual and legal bases of [his] federal claim." <u>See</u> <u>Coningford v. Rhode Island</u>, 640 F.3d 478, 482 (1st Cir. 2011) (quoting <u>Adelson v. DiPaola</u>, 131 F.3d 259, 262 (1st Cir. 2003)). "A claim is fairly presented when the petitioner has tendered his federal claim 'in such a way as to make it probable that a reasonable jurist would have been alerted to the

existence of the federal question.'" <u>Sullivan v. Saba</u>, 840 F. Supp. 2d 429, 434 (D. Mass. 2012) (quoting <u>Clements v. Maloney</u>, 485 F.3d 158, 162 (1st Cir. 2007)).   To exhaust federal claims in state court, the federal nature of the claims must be indicated by: "(1) citing a provision of the federal constitution; (2) presenting a federal constitutional claim in a manner that fairly alerts the state court to the federal nature of the claim; (3) citing federal constitutional precedents; or (4) claiming violation of a right specifically protected in the federal constitution." <u>Clements</u>, 485 F.3d at 162.   The First Circuit has also noted that "in some situations, citations to state court decisions which rely on federal law or articulation of a state claim that is, 'as a practical matter, []  indistinguishable from one arising under federal law,' may suffice to satisfy the exhaustion requirement.'" <u>Id.</u> (quoting <u>Nadworny v. Fair</u>, 872 F.2d 1093, 1099-1100 (1st Cir. 1989)).

In the Petition, Monteiro does not cite a provision of the federal Constitution or allege a constitutional violation in support of his Ground II claim.  D. 1 at 7; <u>see</u> D. 2 at 9-11; D. 23 at 33-4.  The two Supreme Court cases Monteiro relies upon in his supporting memoranda, <u>see</u> D. 2 at 10; D. 23 at 4, <u>Michelson v. United States</u>, 335 U.S. 469, 475-76 (1948), and <u>Greer v. United States</u>, 245 U.S. 559, 560 (1918), do not invoke the constitutional right to a fair trial and instead relate to the evidentiary rules and principles governing the admission of character evidence.  <u>See</u> <u>Michelson</u>, 335 U.S. at 484 (concluding that the admission of evidence regarding defendant's prior arrest was not an abuse of discretion given "the context of [the] evidence and in the absence of objection on [that] specific ground"); <u>Greer</u>, 245 U.S. at 560 (affirming appellate court and explaining that "[i]t is not established as a matter of law that all persons indicted are men of good character" and that "character is not an issue in the case unless the prisoner chooses to make it one").

In his second motion for a new trial and accompanying memorandum to the Suffolk Superior Court, Monteiro requested a new trial "pursuant to Mass. R. Crim. P. 30(b), the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution" and listed various grounds, including that "[t]he fairness of the [his] trial was further marred by the introduction and gratuitous use of his nickname, 'Killa' or 'Killer'" and he submitted that "this inflammatory and prejudicial evidence should not have been admitted at trial."  D. 28-1 at 164.  Monteiro argued that the nickname, which should never have been admitted, was used gratuitously and for improper purposes throughout the trial and the prejudicial impact was not mitigated by a limiting instruction. See id. at 182-88.  These arguments regarding the admissibility and use of Monteiro's nickname, however, were grounded in state evidentiary rules, did not raise any constitutional arguments or Supreme Court cases and were untethered to the singular mention of the constitutional amendments.  See id.  Similarly, in Monteiro's brief to the Massachusetts Appeals Court, the issue presented was framed as, "[w]as Monteiro deprived of a fair trial because the trial judge improperly allowed the Commonwealth to use Monteiro's nickname 'Killa,'" but his arguments solely relied upon Massachusetts evidentiary rules and cases without any reference to any constitutional grounds or Supreme Court cases.  See id. 47-60.  Monteiro raised substantively the same arguments, which lacked any reference to a constitutional violation, in his ALOFAR and asserted that he did not receive a fair trial since his nickname was "inadmissible and unfairly prejudicial, because it was utterly unnecessary for identification and was admitted solely to suggest criminal propensity."  Id. at 739-40, 747, 749-54.  Monteiro's continued characterization of the nickname evidence as "prejudicial" speaks to evidentiary rules, not due process or other constitutional grounds.  This is insufficient to establish the fair presentation prerequisite.  Coningford, 640 F.3d at 482-83 (concluding petitioner did not fairly present a due process claim by relying upon state

evidentiary rules, "accompanied by generalized complaints about prejudice"); <u>Martens v. Shannon</u>, 836 F.2d 715, 717 (1st Cir. 1988) (noting that "the exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record. The ground relied upon must be presented face-up and squarely; the federal question must be plainly defined").  Accordingly, Ground II is unexhausted.[1]

### 2.    *Ground II is Procedurally Defaulted*

Even assuming *arguendo* that Ground II was exhausted, it is procedurally defaulted because, as the Commonwealth contends, the Massachusetts Appeals Court expressly rejected Monteiro's claim "based on the independent and adequate state procedural bar of preservation— that is, of failing to comply with the state's contemporaneous-objection rule." D. 27 at 12.  The Massachusetts contemporaneous objection rule, which requires a party to make their objection known at the time of the ruling, Mass. R. Crim. P. 22, is an independent and adequate state procedural rule barring federal habeas review.  <u>See</u> <u>Janosky v. St. Amand</u>, 594 F.3d 39, 44 (1st Cir. 2010) (citing <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991)).  "The [Supreme Judicial Court] regularly enforces the rule that a claim not raised is waived."  <u>Gunter v. Maloney</u>, 291 F.3d 74, 79 (1st Cir. 2002); <u>see</u> <u>Janosky</u>, 594 F.3d at 44 (stating that "[w]e have held, with a regularity bordering on the monotonous, that the Massachusetts requirement for contemporaneous objections is an independent and adequate state procedural ground, firmly established in the state's jurisprudence and regularly followed in its courts").  As to the admission

---

[1]  The Commonwealth also asserts that Monteiro's "challenge is not cognizable before this court because it concerns an alleged error of state law." D. 27 at 14.  In the present case, Monteiro's arguments and reliance on state law together with the Massachusetts Appeals Court's reasoning in denying his claim, which was also solely based on Massachusetts evidentiary law, D. 28-1 at 527-28, are insufficient "to transmogrify his garden-variety claim of evidentiary error into the functional equivalent of a claim of constitutional magnitude."  <u>Coningford</u>, 640 F.3d at 483.

of Montiero's nickname, Monteiro's trial counsel objected to the admission of same in a motion in limine prior to trial.  See D. 28-1 at 95-96; id. at 107; D. 28-3 at 70-72.  Monteiro's trial counsel, however, did not object during trial on the basis that admission and use of the nickname would prejudicially suggest to the jury that Monteiro "was a dangerous person who could have committed the crime of murder, even though he had never been accused, charged, or previously convicted of [a homicide]," D. 2 at 9; D. 23 at 3.  The Massachusetts Appeals Court noted as much and applied the "substantial risk of a miscarriage of justice" to this unpreserved objection in rejecting Montiero's claim that the trial judge erroneously allowed the Commonwealth to admit evidence of his nickname.  D. 28-1 at 527; Monteiro, 2022 WL 2674229, at *1 (citing Commonwealth v. Lawton, 82 Mass. App. Ct. 528, 533 (2012) (noting that "[b]ecause the defendant has raised this issue for the first time on appeal, we review only to determine whether a substantial risk of miscarriage of justice was created"); cf. Commonwealth v. Grady, 474 Mass. 715, 719 (2016) (noting that, "going forward," "[a]n objection at the motion in limine stage will preserve a defendant's appellate rights *only* if what is objectionable at trial was specifically the subject of the motion in limine") (emphasis in original).  Thus, Monteiro has procedurally defaulted on this claim and did not preserve it for a *habeas* petition.  See, e.g., Horton v. Allen, 370 F.3d 75, 80-83 (1st Cir. 2004) (concluding that because "[d]efense counsel did not object to conducting the individual voir dire in the anteroom" the claim was not preserved for a *habeas* petition); see Rodriguez v. Russo, 495 F. Supp. 2d 158, 169-70 (D. Mass. 2007) (concluding that the alleged grounds for *habeas* relief were not properly preserved because petitioner failed to contemporaneously object).

To overcome this procedural default, Monteiro has the burden of demonstrating cause for the default and prejudice, or a miscarriage of justice.  See Janosky, 594 F.3d at 44; Coleman, 501 U.S. at 750.  "The general requirement for cause for a procedural default is that the prisoner must

show 'that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" Gunter, 291 F.3d at 81 (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)); Burks v. Dubois, 55 F.3d 712, 717 (1st Cir. 1995) (citing cases). Here, Monteiro raised his objection regarding the admission and use of his nickname prior to trial and there is no reason as to why he could not have similarly raised his objections during trial. Monteiro makes no showing as to cause, see generally D. 1; D. 2; D. 23, and the Court does not find that this exception is applicable.

Even if Monteiro could demonstrate cause, he would also need to show actual prejudice. Ortiz v. Dubois, 19 F.3d 708, 714 (1st Cir. 1994). To prove actual prejudice, Monteiro must show "not merely that the errors . . . created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Costa v. Hall, 673 F.3d 16, 26 (1st Cir. 2012) (emphasis and internal quotation marks omitted). As the Massachusetts Appeals Court determined, "evidence of [Monteiro's] nickname was relevant to his identity and to the context of the threat he intended to convey to both witnesses." D. 28-1 at 527. "Additionally, the record does not support the defendant's further claim that the Commonwealth made gratuitous use of and exploited the defendant's nickname to impeach his character" and "[t]he witnesses who were threatened did not overuse the nickname during their testimony." Id. Monteiro has, therefore, not carried his burden in relation to demonstrating prejudice.

Monteiro has similarly failed to establish a miscarriage of justice. "It is clear that for habeas purposes the federal 'fundamental miscarriage of justice' standard means that petitioner must establish actual innocence." Simpson v. Matesanz, 175 F.3d 200, 210 (1st Cir. 1999). Monteiro has the burden "to demonstrate that more likely than not, in light of the new evidence,

no reasonable juror would find him guilty beyond a reasonable doubt – or, to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt." <u>House v. Bell</u>, 547 U.S. 518, 538 (2006).  Because this exception "applies only in extraordinary circumstances," <u>Janosky</u>, 594 F.3d at 46 (citing cases), Monteiro must present "reliable evidence," such as "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence" to mount a successful innocence claim.  <u>House</u>, 547 U.S. at 537 (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 324 (1995)) (internal quotation marks omitted).  Monteiro has made no such showing here to support a claim of actual innocence.  Accordingly, the Court concludes on this record that there was no fundamental miscarriage of justice.

Accordingly, Ground II is procedurally defaulted.

### B.    Ineffective Assistance of Counsel (Ground III)

In Ground III, Monteiro argues that his trial counsel's failure to effectuate a clearly viable defense of a third-party culprit amounts to ineffective assistance of counsel.  D. 1 at 8; D. 2 at 11-12; D. 23 at 4-5.  Monteiro contends that the evidence against him was "overwhelmingly circumstantial" and non-conclusive, including because a witness "could not and did not directly identify [him] as th[e] suspect" seen leaving the area of the crimes, "evidence [was] introduced that [his] cell phone was more than [five] miles away from where the crime took place at the time of the crime," and the police had photographic evidence of the crime scene that another car matched the partial license plate seen by a witness.  D. 1 at 8.[2]

---

[2] To the extent Monteiro argues that the Massachusetts Appeals Court's failure to consider "contrary evidence offered by the other side to rebut or cast doubt," D. 2 at 12; D. 23 at 5, and its decision violated his right to "a meaningful opportunity to present a complete defense," D. 2 at 12 (and cases cited), this argument is deemed waived as it was not asserted in the Petition.  <u>See</u> <u>Logan v. Gelb</u>, 790 F.3d 65, 70 (1st Cir. 2015) (concluding that argument not raised in *habeas* petition was waived).  Additionally, because this claim was not "fairly presented" in state court, <u>see</u> <u>Sullivan</u>, 840 F. Supp. 2d at 434, it was not exhausted.  <u>See</u> <u>Clements</u>, 485 F.3d at 162.

To establish ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), Monteiro must show: "(1) deficient performance by counsel (2) resulting in prejudice." Yeboah-Sefah v. Ficco, 556 F.3d 53, 70 (1st Cir. 2009) (quoting Malone v. Clarke, 536 F.3d 54, 63 (1st Cir. 2008)). When a defendant makes an "insufficient showing" on either Strickland prong, "a court deciding an ineffective assistance claim" need not "address both components of the inquiry." Strickland, 466 U.S. at 687. To demonstrate deficient performance, the petitioner must show that his counsel's performance "fell below an objective standard of reasonableness under the circumstances." Yeboah-Sefah, 556 F.3d at 70 (quoting Sleeper v. Spencer, 510 F.3d 32, 38 (1st Cir. 2007)). To demonstrate prejudice, a defendant must show "that, but for counsel's unprofessional error, there is a reasonable probability that the result of the proceeding would have been different." Id. (quoting Sleeper, 510 F.3d at 39).

A defendant has the constitutional "right to effective representation, not a right to an attorney who performs his duties 'mistake-free.'" Weaver v. Massachusetts, 582 U.S. 286, 300 (2017) (quoting United States v. Gonzalez-Lopez, 548 U.S. 140, 147 (2006)). A counsel's strategic decisions do not amount to ineffective assistance unless they are "so manifestly unreasonable as to be unprotected by the labels of trial strategy or trial tactics." Commonwealth v. Adams, 374 Mass. 722, 728 (1978) (citations and internal quotation marks omitted).

When considering the Strickland standard as to a *habeas* petition, the question is not whether counsel's actions were reasonable, but instead whether there is "any reasonable argument that counsel satisfied Strickland's deferential standard." Harrington, 562 U.S. at 105. That is, "[t]he standards created by Strickland and § 2254(d) are both highly deferential, . . . when the two apply in tandem, review is doubly so." Id. (citations and internal quotation marks omitted).

15

    1.     *The Massachusetts Appeals Court Decided Monteiro's Claim of Ineffective Assistance of Counsel on the Merits*

The Massachusetts Appeals Court considered Monteiro's arguments that his "trial counsel was constitutionally ineffective because (1) trial counsel's strategy was flawed because of its propensity to inculpate the defendant, and (2) a number of errors by trial counsel cumulatively deprived defendant of effective representation." D. 28-1 at 528; Monteiro, 2022 WL 2674229, at *2. Monteiro alleged that his trial counsel's "strategy to show that every civilian witness was lying worked to inculpate [him] rather than exculpate him[,]" that trial counsel "irrationally and fatally conceded that [Monteiro] was the user of the phone that was close in proximity to the crime scene a few minutes after the murders" and that trial counsel "made a number of missteps over the course of the trial that cumulatively constituted ineffective assistance of counsel." D. 28-1 at 529; Monteiro, 2022 WL 2674229, at *3. The Massachusetts Appeals Court noted that Monteiro's arguments with respect to trial counsel's various missteps lacked evidentiary support and "need not be considered" because they were presented in a "cursory and conclusory fashion, and for the most part without citation to supporting legal authority." D. 28-1 at 529; Monteiro, 2022 WL 2674229, at *3. The court, however, still undertook "a thorough review of the record." D. 28-1 at 529; Monteiro, 2022 WL 2674229, at *3. Accordingly, the Massachusetts Appeal Court's decision that "none of the individual instances raised [before it] resulted in a substantial risk of a miscarriage of justice" qualifies as an adjudication on the merits. D. 28-1 at 529; Monteiro, 2022 WL 2674229, at *3. AEDPA "provides that on federal habeas review, the level of deference owed to a state court decision hinges on whether the state court ever adjudicated the relevant claim on the merits." Clements v. Clarke, 592 F.3d 45, 52 (1st Cir. 2010) (citing 28 U.S.C. § 2254(d)). While *habeas* review is typically deferential, absent an adjudication on the merits, *de novo* review is appropriate. Id. at 52. When "a federal claim has been presented to a state court and the state

court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington, 562 U.S. at 99.  Thus, deferential review under 28 U.S.C. § 2254 is appropriate.

> 2.    *The Massachusetts Appeals Court's Decision was not "Contrary to" or an "Unreasonable Application" of Clearly Established Federal Law*

The Massachusetts Appeal's Court's determination that Monteiro was not denied effective assistance of counsel was not contrary to Strickland.  Monteiro has not provided any factual allegations to dispute the state court's factual determinations or made a showing by clear and convincing evidence, as required under 28 U.S.C. § 2254(e)(1), and this Court presumes those determinations were correct.  See 28 U.S.C. § 2254(e)(1).

For the purposes of *habeas* review, "[t]he Strickland standard qualifies as clearly established federal law." Janosky, 594 F.3d at 47.  The Massachusetts Appeals Court analyzed the Suffolk Superior Court's denial of Monteiro's second motion for a new trial, based on his claim of ineffective assistance of counsel, under Commonwealth v. Saferian, 366 Mass. 89, 96 (1947). D. 28-1 at 528-29.  The First Circuit has established that "the Saferian standard is at least as protective as, and functionally equivalent to, the Strickland standard and that the AEDPA deference is appropriate in reviewing Massachusetts decisions applying Saferian." Quintanilla v. Marchilli, 86 F. 4th 1, 15 n.14 (1st Cir. 2023).  Where, as here, the Massachusetts Appeals Court determined that Monteiro failed to meet Saferian, he fails to meet Strickland.  See Scarpa v. Dubois, 38 F.3d 1, 7 & n.4 (1st Cir. 1994) (citing Commonwealth v. Fuller, 394 Mass. 251, 256 n.3 (1985)); see also Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006) (noting that "[t]his Circuit has held that where the SJC applies its more favorable 'substantial likelihood of a miscarriage of justice' standard, its decision will not be deemed to be 'contrary to' the Strickland criterion").  Further, Montiero has also not identified a Supreme Court case, with facts that are materially

indistinguishable from his own, that reached a different conclusion from that of the Massachusetts Appeals Court.  See Malone v. Clarke, 536 F.3d 54, 63 (1st Cir. 2008) (explaining that for a *habeas* petitioner's case to "fall under the 'contrary to' category," petitioner must have pointed to, or the reviewing court must have found, a "Supreme Court case reaching a different result than the state court in [the present case] involving materially indistinguishable facts").

The Massachusetts Appeals Court's decision was also not an unreasonable application of clearly established law.  In analyzing whether Montiero's trial counsel's performance "[fell] measurably below that which might be expected from an ordinary fallible lawyer," Saferian, 366 Mass. at 96, and whether that "likely deprived [him] of an otherwise available, substantial ground of defence," id., the court explained that it would conduct its review with "some deference" based on a record demonstrating trial counsel's strategic basis for its course of action.  D. 28-1 at 528; Monteiro, 2022 WL 2674229, at *2.  The court noted Montiero's trial counsel was an experienced criminal defense attorney whose strategy was to undermine the Commonwealth by discrediting key witnesses, including Docanto and Bryson, and "casting doubt that [Monteiro] was at the location of the murders."  D. 28-1 at 529; Monteiro, 2022 WL 2674229, at *3.  The Massachusetts Appeals Court concluded that trial counsel's strategy and decisions were reasonable, particularly in light of the evidence and counsel's awareness of the Commonwealth's witnesses, and that trial counsel's performance "did not fall measurably below that of an ordinary fallible lawyer."  D. 28-1 at 529; Monteiro, 2022 WL 2674229, at *3.  The court determined that trial counsel's concession that Monteiro was the user of the cell phone in close proximity to the crime scene was not "irrational since trial counsel was aware that the Commonwealth had a witness who would testify that she bought the phone for the defendant and that she had spoken to him on that cell phone twice on the day of the murders."  D. 28-1 at 529; Monteiro, 2022 WL 2674229, at *3; see Knight, 447

F.3d at 15 (explaining that "[i]t is only where, given the facts known at the time, counsel's 'choice was so patently unreasonable that no competent attorney would have made it,' that the ineffective assistance prong is satisfied") (quoting <u>Strickland</u>, 466 U.S. at 689).  Applying <u>Strickland</u>, this Court agrees with the Massachusetts Appeals Court's conclusion and, thus, the appellate court's application of <u>Saferian</u>, the Massachusetts equivalent of <u>Strickland</u>, was not an "unreasonable application" of clearly established federal law.  <u>See</u> 28 U.S.C. § 2254(d)(1).

Even assuming *arguendo* that Monteiro had shown that the failure to put forth a third-party culprit defense was deficient, he has failed to show that he was prejudiced by it.  <u>See</u> <u>Yeboah-Sefah</u>, 556 F.3d at 70.  The second prong of <u>Strickland</u> requires a showing that counsel's deficient performance prejudiced him, creating a reasonable probability that the outcome at trial would have been different.  <u>Id.</u>; <u>see</u> <u>Strickland</u>, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  <u>Strickland</u>, 466 U.S. at 694; <u>United States v. Messner</u>, 37 F.4th 736, 741 (1st Cir. 2022) (same).  After reviewing the evidentiary record, the Massachusetts Appeals Court concluded that "none of the individual instances raised [before it] resulted in a substantial risk of a miscarriage of justice, nor did they collectively impair the defendant's rights to a fair trial and due process."  D. 28-1 at 529; <u>Monteiro</u>, 2022 WL 2674229, at *3.  Relying upon <u>Saferian</u>, the court stated it did not discern prejudice to Monteiro on account of his trial counsel's conduct and concluded "there was no error in denying the defendant's second motion for a new trial."  D. 28-1 at 529; <u>Monteiro</u>, 2022 WL 2674229, at *3.  Monteiro makes no arguments or showing with respect to how he was prejudiced by his trial counsel's failure to raise a third-party culprit defense or whether it is reasonably likely that the result would be different.  <u>See</u> D. 2 at 11-12; D. 23 at 4-5; <u>Yeboah-Sefah</u>, 556 F.3d at 70.  Monteiro's "cursory and conclusory" arguments before the Massachusetts Appeals Court without supporting evidence or

legal authority did not persuade the appellate court that absent trial counsel's alleged failures the outcome would have been different.  D. 28-1 at 529; Monteiro, 2022 WL 2674229, at *3.  This Court agrees.  See Strickland, 466 U.S. at 695.

Accordingly, the Massachusetts Appeals Court's decision is neither contrary to, nor an unreasonable application, of clearly established law, and Monteiro's ineffective assistance of counsel claim, Ground III of the Petition, fails.

### C.    An Evidentiary Hearing is Not Warranted

In his memorandum in support of Grounds II and III, Monteiro cursorily requests an evidentiary hearing on the two remaining claims in his Petition.  D. 23 at 5.  Federal judges reviewing *habeas* petitions have discretion to grant evidentiary hearings where not explicitly prohibited by Section 2254.  Atkins v. Clarke, 675 F. Supp. 2d 200, 203 (D. Mass. 2009) (citing Teti v. Bender, 507 F.3d 50, 61 (1st Cir. 2007)).  Even where there is no bar to a hearing (as is the case here), "the court must still determine whether Petitioner has shown that this is an exceptional situation warranting an evidentiary hearing."  Atkins, 675 F. Supp. 2d at 204.  Accordingly, "[f]ederal evidentiary hearings seeking to rehear issues addressed by the state courts 'ought to be the exception, not the rule.'"  Teti, 507 F.3d at 61 (quoting Pike v. Guarino, 492 F.3d 61, 70 (1st Cir. 2007)).  "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007). Additionally, "[b]ecause the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate."  Id.  Having considered same, the entirety of the

record along with analysis of Grounds II and III as discussed above, the Court concludes that an evidentiary hearing is not warranted here.

**V.    Conclusion and Certificate of Appealability**

For the foregoing reasons, the Court DENIES the Petition, D. 1.  A petitioner may receive a certificate of appealability only if he "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Such a showing is made when "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000).  Based upon the analysis of the record and the applicable law in this Memorandum and Order, the Court does not, at this juncture, conclude that reasonable jurists would find its conclusion denying the Petition debatable or wrong.  The Court, therefore, is not inclined to issue a certificate of appealability but will give Monteiro until January 16, 2026 to file a memorandum if he seeks to address the issue of whether a certificate of appealability is warranted as to Grounds II and/or III in the Petition.

**So Ordered.**

<u>/s Denise J. Casper</u>
Chief United States District Judge